## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMERICAN FEDERATION** | ) | Case No. ____ |
| **OF TEACHERS** | ) | |
| 555 New Jersey Ave. NW | ) | |
| Washington, D.C. 20001 | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **THE HIGHER EDUCATION LOAN** | ) | |
| **AUTHORITY OF THE STATE OF** | ) | |
| **MISSOURI** | ) | |
| 633 Spirit Dr. | ) | |
| Chesterfield, MO 63005 | ) | |
| | ) | |
| **Defendant.** | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, Defendant The Higher Education Loan Authority of the State of Missouri ("MOHELA"), by counsel, hereby files its Notice of Removal of this action from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia.

MOHELA bases its removal on the following grounds:

1. On July 22, 2024, Plaintiff American Federation of Teachers ("AFT") filed an action against MOHELA in the Superior Court for the District of Columbia, captioned *American Federation of Teachers v. The Higher Education Loan Authority of the State of Missouri*. It is docketed as Civil Action No. 2024-CAB-004575. A copy of the Complaint is attached within Exhibit A.

2.      MOHELA received the Complaint and summons on July 25, 2024 and has timely filed this removal within thirty days in accordance with 28 U.S.C. § 1446(b).  *See also Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999).

3.      AFT alleges violations of the D.C. Consumer Protection Procedures Act ("DCCPA"), D.C. Code § 28-3901, *et seq.*  The alleged violations relate to MOHELA's administration, pursuant to a contract with the U.S. Department of Education ("Department"), of the William D. Ford Direct Loan Program ("Direct Loan Program"), 20 U.S.C. § 1087a *et seq.*, and the Department's Public Service Loan Forgiveness ("PSLF") Program.  *See* Compl. ¶¶ 38–42, Ex. A.  Specifically, AFT's allegations relate to billing practices, *id.* ¶¶ 116–125; application processing, *id.* ¶¶ 126–144; and communications with borrowers, *id.* ¶¶ 145–190.  AFT asserts three claims under the DCCPA: one on behalf of AFT as an entity, one on behalf of AFT members, and one "on behalf of the general public."  *Id.* ¶¶ 205–267.

4.      Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the civil docket sheet, Complaint, summons, civil information sheet, initial order, AFT's Opposed Motion for Certification and Assignment to Civil I Calendar, and extension order are attached as Exhibit A. MOHELA has not received any other process, pleadings, or orders.

5.      In accordance with 28 U.S.C. § 1446(d), MOHELA is providing notice to AFT through its attorneys of record and is filing a copy of this notice with the Superior Court for the District of Columbia.

## GROUNDS FOR REMOVAL

## Federal Officer Removal

6.      This court has jurisdiction over AFT's Complaint pursuant to 28 U.S.C. § 1442(a)(1), which provides for removal of any "civil action . . . against or directed to . . . any

officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." Removal under § 1442(a)(1), also known as federal officer removal, is available to a federal contractor when it can demonstrate that it: (1) "is a 'person' within the meaning of the statute," (2) "acted under the direction of a federal officer," (3) is being sued for actions "relating to" its federal officer status; and (4) "has a colorable federal defense to the plaintiff's claims." *MobilizeGreen, Inc. v. Cmty. Found. for Nat'l Cap. Region*, 101 F. Supp. 3d 36, 41 (D.D.C. 2015) (quotation marks and citations omitted); *Dist. of Columbia. v. Exxon Mobil Corp.*, 89 F.4th 144, 155 (D.C. Cir. 2023).  A court "must construe the statute liberally in favor of removal" and "credit the officer's theory of the case."  *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 506 (D.C. Cir. 2020) (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) and *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)) (internal quotation marks omitted) (alterations omitted).

7.     MOHELA satisfies each prong of federal officer removal.

8.     MOHELA satisfies the first prong because it is a "person" within the meaning of 28 U.S.C. § 1442(a)(1).  "Person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *see Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (same).  MOHELA is a public corporation.  *See Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023) ("Missouri created MOHELA as a nonprofit government corporation to participate in the student loan market." (citing Mo. Rev. Stat. § 173.360)).

9.     MOHELA satisfies the second prong—acting under the direction of a federal officer—as well. "[A]n entity 'act[s] under' a federal officer when it 'assist[s], or [ ] help[s] carry

3

out, the duties or tasks of the federal superior.'" *MobilizeGreen, Inc.*, 101 F. Supp. 3d at 42 (quoting *Watson*, 551 U.S. at 152).

10.     Rather than self-service the Direct Loans, the Department contracts with third-party servicers to perform that function. *See* 20 U.S.C. § 1087f(a)(2); *e.g.*, 2011 Contract, Ex. B. MOHELA, as one of the Department's third-party servicers, services the Direct Loans at issue in AFT's Complaint. *See* Compl. ¶¶ 66–68, Ex. A ("The federal government does not administer the student loan system's day-to-day activities itself…. Student loan servicers are borrowers' primary, and often only, *official* points of contact regarding their federal student loans.") (emphasis added).

11.     In addition, the Department offers the PSLF Program.  Under the PSLF Program, the federal government may forgive the remaining balance of a borrower's Direct Loans after the borrower satisfies particular statutory and regulatory requirements.  Again, and as AFT acknowledges, MOHELA has administered the PSLF Program pursuant to a contract with the Department.  *See* Compl. ¶ 39, Ex. A ("On July 1, 2022, MOHELA became the interim PSLF program federal servicer on behalf of ED."); *id.* ¶ 42 ("MOHELA is one of the companies hired by ED for the administration of PSLF."); *id.* ¶ 78 ("MOHELA . . . took over both the [PSLF] related loan servicing and program administration responsibilities").

12.     Thus, the liability alleged by AFT arises by virtue of actions MOHELA performed at the direction of a federal officer.

13.     For these reasons, several courts have upheld removal of actions brought against federal student loan servicers under 28 U.S.C. § 1442(a)(1) and denied plaintiffs' remand motions. *See*, *e.g.*, *Holston v. Pa. Higher Educ. Assistance Agency*, 2019 WL 4745051, at *2 (D.N.J. Sept. 30, 2019) (upholding federal student loan servicer's removal of action to federal

court under § 1442(a)(1) because it acted under direction of a federal officer when "service[ing] student loans issued by the federal government under the [Direct] Loan Program, … and under the Federal Family Education Loan Program," and when "administer[ing] the [PSLF] Program"); *Cobb v. GC Servs., LP*, 2016 WL 7155765, at *2 (S.D.W. Va. Dec. 7, 2016) (upholding federal student loan servicer's removal of action to federal court under § 1442(a)(1) because it acted under direction of a federal officer when it "helped and assisted the [Department] in its loan collection activities"); *Smith v. Collection Techs., Inc*., 2016 WL 1169529, at *2–4 (S.D. W.Va. Mar. 22, 2016) (same); *Snuffer v. Great Lakes Educ. Loan Servs., Inc.*, 2015 WL 13049342, at *2 (S.D. W.Va. Mar. 19, 2015) (same).

14.     For similar reasons, MOHELA meets the third—"relating to"—prong.  A suit "relates to" an "act under color of [federal] office," and therefore may be removed under § 1442(a)(1)(A), so long as "acts taken under color of federal office are 'connected or associated' with the conduct at issue in the case." *Exxon Mobil*, 89 F.4th at 155–56 (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc)); *see also id.* at 155 ("[T]he statute does not require a causal connection between acts taken under color of federal office and the basis for the action.").

15.     AFT's claims concern MOHELA's discharge of its responsibilities as a loan servicer for the Department.  Such responsibilities are, by definition, under color of federal office. *See, e.g.*, Complaint ¶ 69, Ex. A (alleging various obligations of Department loan servicers); 2011 Contract, Ex. B, at 36–41 ("Attachment A-2: Not For Profit (NFP) High-Level Federal Servicer Requirements"); Sept. 15 Amendment to Incorporate PSLF Requirements, Ex. C ("PSLF Amendment") at 3–8.  Moreover, AFT makes several allegations about MOHELA's communications with borrowers.  As a Department loan servicer, such communications were

made on the Department's behalf.  Department guidelines heavily inform those communications and the Department closely monitors the communications themselves. *See, e.g.*, Fed. Student Aid, Dep't of Educ., *Return to Repayment, Student Debt Relief, and Income Driven Repayment New Communications Playbook* (July 3, 2023), Ex. D.  Accordingly, there is a strong relationship between actions taken by MOHELA at the Department's direction and the conduct at issue in this case.

16.     Finally, MOHELA satisfies the fourth prong because it has a colorable federal defense to AFT's claims.  "The federal defense need only be 'colorable,' not 'clearly sustainable.'" *K&D LLC*, 951 F.3d at 506 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)); *cf. Nigro v. Pa. Higher Educ. Assistance Agency*, 2020 WL 5369980, at *6 (M.D. Pa. Sept. 8, 2020) (holding that loan servicer satisfied federal defense requirement even though court rejected motion to dismiss on basis of that defense in same opinion).  Here, MOHELA has several colorable federal defenses to AFT's claims, any one of which would be sufficient grounds for removal.

17.     First, MOHELA is an arm of the state of Missouri and thus enjoys sovereign immunity from AFT's claims.  *See Alden v. Maine*, 527 U.S. 706, 713-14 (1999) (recognizing that state sovereign immunity is a doctrine of federal constitutional law).  For purposes of state sovereign immunity, determining "whether an entity is an arm of the State … requires examination of three factors: (1) the State's intent as to the status of the entity, including the functions performed by the entity; (2) the State's control over the entity; and (3) the entity's overall effects on the state treasury."  *P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008).

18.     Here, all three factors establish that MOHELA is entitled to sovereign immunity. Missouri intends for MOHELA to be an arm of the state, designating it as such in law.  *See, e.g.*, Mo. Rev. Stat. §§ 173.360, 173.415.  MOHELA's board is controlled by the state, comprising two state officials and five members appointed by the Governor and approved by the State Senate, and all members are removable by the Governor.  *Id.* § 173.360.  Missouri law also imposes restrictions on how MOHELA conducts business.  *E.g.*, *id.* §§ 173.385.1, 173.387, 173.390 173.392.  And MOHELA affects the state treasury because, among other reasons, its profits help fund education in Missouri: "MOHELA has provided $230 million for development projects at Missouri colleges and universities and almost $300 million in grants and scholarships."  *Biden*, 143 S. Ct. at 2366 (recognizing that "harm to MOHELA is also a harm to Missouri"); *see* Mo. Rev. Stat. § 173.392 (establishing a fund in the state treasury to which MOHELA is required to contribute for these purposes).

19.     Numerous federal courts have recognized that MOHELA is entitled to sovereign immunity.  *E.g.*, *Good v. U.S. Dep't of Educ.*, 2022 WL 2191758 (D. Kan. June 16, 2022), *appeal docketed*, No. 22-3286 (10th Cir. Dec. 30, 2022); *Gowens v. Capella Univ., Inc.*, 2020 WL 10180669 (N.D. Ala. Jun. 1, 2020); *In re Stout*, 231 B.R. 313, 315 (W.D. Mo. 1999); *see also P.R. Ports Auth.*, 531 F.3d at 873 ("[O]nce an entity is determined to be an arm of the State under the three-factor test, that conclusion applies unless and until there are relevant changes in the state law governing the entity.").

20.     Second, as a federal contractor, MOHELA enjoys a derivative federal sovereign immunity that bars AFT's claims.  "[D]erivative sovereign immunity ensures that there is no liability on the part of the contractor who simply performed as the Government directed."  *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 69 (D.C. Cir. 2019) (internal

quotation marks omitted).  AFT asserts that MOHELA is liable by virtue of actions it took, or should have taken, and by virtue of communications it made, or should have made.  But, as described above, MOHELA took the actions and communications at issue in AFT's Complaint pursuant to its role as a loan servicing contractor and/or PSLF Program administrator on behalf of the Department.  That entitles MOHELA to derivative sovereign immunity.  *Id.* at 70; *see also Berman v. PHEAA*, No. 23-1414, 2024 WL 1615016, at *2 (4th Cir. Apr. 15, 2024) (finding student loan servicer entitled to derivative sovereign immunity from claims relating to administration of PSLF Program because "the Department authorized the [the servicer's] actions by contract"), *petition for cert. filed* (U.S. Aug. 2, 2024) (No. 24-117).

21.    Third, the Higher Education Act ("HEA") preempts at least some of AFT's claims, all of which are under the DCCPPA.  *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 199 (5th Cir. 2019) (holding preemption is a colorable federal defense).  The HEA, its implementing regulations, and Department contracts entered into pursuant to the HEA together detail the loan servicers' obligations.  As stated above, AFT's claims relate to billing practices, *see* Compl. ¶¶ 116–125, Ex. A, application processing (including for PSLF), *id.* ¶¶ 126–144, and communications with borrowers of federal student loans, *id.* ¶¶ 145–190.  Such claims seek to enforce obligations that conflict with the HEA, Department regulations, and/or Department contracts and are thus preempted.  *See Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 326 (D.C. Cir. 2014) ("[S]tate laws are preempted when they conflict with federal law."); *Student Loan Servicing All. v. Dist. of Columbia*, 351 F. Supp. 3d 26, 62 (D.D.C. 2018) ("[A]ny state law that impedes the federal government's ability to contract … [is] preempted."); *Chae v. SLM Corp.*, 593 F.3d 936, 950 (9th Cir. 2010) (holding California consumer-protection claims against student loan servicer preempted by HEA).  For example, the HEA and its

implementing regulations and guidance preempt AFT's claims that MOHELA failed to send AFT's members timely bills, created an unlawful backlog of borrower complaints and applications, and unlawfully relied on self-service customer service options. *See, e.g.*, Compl. ¶¶ 132, 135–136, 142–144, 156–165, Ex. A. The HEA also expressly preempts state-law claims requiring certain communications with borrowers, such as AFT's claims related to MOHELA's alleged failures to adequately communicate certain matters to borrowers. *See* 20 U.S.C. § 1098g.

22.    MOHELA therefore satisfies each requirement for federal officer removal under 28 U.S.C. § 1442(a)(1), and this matter may be removed to this Court under 28 U.S.C. § 1446.

## Federal Question Jurisdiction

23.    A federal question provides a second independent basis for jurisdiction over AFT's claims. *See* 28 U.S.C. § 1441(a).  Under 28 U.S.C. § 1331, federal district courts possess original jurisdiction over "civil actions arising under the . . . laws . . . of the United States." While AFT's claims do not rest on a federal cause of action, the Complaint nevertheless falls in the category of cases in which federal jurisdiction still exists.

24.    The Supreme Court has established a four-part test for federal jurisdiction over state-law claims. *See, e.g.*, *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Under this test, a district court possesses federal jurisdiction over a state-law claim when a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* AFT's claims satisfy this test.

25.    AFT's claims meet the first two prongs because they rest on the assumptions that (1) MOHELA "fail[ed] to comply with its basic responsibilities as a student loan servicer," responsibilities that AFT acknowledges are set in part by federal law, Compl. ¶¶ 69–72, 210, 231, 252, Ex. A, and (2) AFT members complied with the PSLF Program's requirements, or, at

least, would have complied absent MOHELA's alleged conduct, *id.* ¶¶ 239–246.  As a result, vindication of the claims—as framed by AFT—will necessarily require the parties to litigate, and the Court to interpret, (1) the "responsibilities" of student loan servicers as defined by federal law and/or (2) the requirements of the PSLF Program under federal law, *see* 20 U.S.C. § 1087e(m); 34 C.F.R. § 685.219; *see also Organic Consumers Ass'n v. Hain Celestial Grp., Inc.*, 285 F. Supp. 3d 100, 103 n.2 (D.D.C. 2018) (recognizing federal question jurisdiction over DCCPPA claims that alleged defendants' products were misrepresented as "organic" and that therefore required interpretation of the Organic Food Production Act of 1990).

26.     AFT's claims satisfy the substantiality prong as well. The Court's inquiry into this prong focuses on "the importance of the issue to the federal system as a whole."  *Gunn*, 568 U.S. at 260.  For example, a federal issue may be substantial where state adjudication of the federal issue would "undermine the development of a uniform body of [federal] law."  *Id.* at 252 (citation omitted).  Here, student loans comprise the federal government's largest financial asset. *See* Jennifer Ash, Advisor Perspectives, Inc., *The Fed's Financial Accounts: What Are Uncle Sam's Largest Assets?* (June 7, 2024), https://www.advisorperspectives.com/dshort/commentaries/2024/06/07/feds-financial-accounts-what-are-uncle-sams-largest-assets.  The question of eligibility for the PSLF Program thus has far-reaching implications for the federal government.  Moreover, this case poses a substantial federal issue because the necessary determination about federal contractor loan servicers' responsibilities could interfere with the uniformity of federal law by creating a patchwork of requirements grounded in state consumer protection statutes.

27.     Finally, the fourth prong—concerning the federal-state balance—also supports federal question jurisdiction.  The implementation of a federal loan forgiveness program is not an

area over which states exercise "a special responsibility." *Gunn*, 568 U.S. at 264 (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978)). To the contrary, courts regularly exercise federal jurisdiction over state-law claims that, like this one, "involve[] a federal contractor's implementation of a federal program." *One & Ken Valley Hous. Grp. v. Me. State Hous. Auth.*, 716 F.3d 218, 224–26 (1st Cir. 2013) (exercising federal jurisdiction over breach-of-contract action that required interpretation of Section 8 and HUD's implementing guidance); *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 466–69 (7th Cir. 2015) (same).

28.    AFT's claims require the Court and the parties to address the meaning of federal law. Any interpretation of these provisions affects the interests of the federal government itself and the interests of thousands of federal student loan borrowers. As such, the Court possesses original jurisdiction over AFT's claims under 28 U.S.C. § 1331.

29.    By filing this notice of removal, MOHELA does not waive any defense that may be available to it, including, but not limited to, the right to contest *in personam* jurisdiction, incomplete process, improper service of process, and/or improper venue, in this Court or in the court from which this action has been removed.

**WHEREFORE**, MOHELA respectfully requests that this action be removed to the United States District Court for the District of Columbia.

Dated: August 26, 2024                      Respectfully submitted,

                                            /s/ Daniel J. Feith
                                            Daniel J. Feith (D.C. Bar No. 1028433)
                                            Benjamin M. Mundel (D.C. Bar No. 1018114)
                                            Brooke E. Boyd (D.C. Bar No. 1721284)
                                            Jeremy D. Rozansky (D.C. Bar No. 90009027)
                                            SIDLEY AUSTIN LLP
                                            1501 K Street, N.W.
                                            Washington, DC 20005

T: (202) 736-8000
F: (202) 736-8711
dfeith@sidley.com
bmundel@sidley.com
brooke.boyd@sidley.com
jrozansky@sidley.com


*Counsel for Defendant*