## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**AMERICAN FEDERATION OF TEACHERS**,

        Plaintiff,

    v.

**THE HIGHER EDUCATION LOAN
AUTHORITY OF THE STATE OF MISSOURI**,

        Defendant.

Case No. 1:24-cv-2460-TSC
Judge Tanya S. Chutkan

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO REMAND

Shennan Kavanagh (BBO #655174)
Jennifer Wagner (WVSB #10639)
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA 02110
617.542.8010
skavanagh@nclc.org
jwagner@nclc.org

Alpha Taylor (DC Bar #252602)
National Consumer Law Center
1001 Connecticut Ave., NW
Washington, D.C. 20036
202.452.6252
ataylor@nclc.org

Faith Gay (NY Bar # 2117117)
Lena Konanova (NY Bar # 4758942)
David A. Coon (NY Bar # 5538020)
Corey Stoughton (DC Bar # 472867)
Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000
fgay@selendygay.com
lkonanova@selendygay.com
dcoon@selendygay.com
cstoughton@selendygay.com

Persis Yu (DC Bar # 90014714)
Student Borrower Protection Center (a fiscally
sponsored project of the Shared Ascent Fund)
1025 Connecticut Ave NW, #717
Washington, D.C. 20036
(202) 618-1328
persis@protectborrowers.org

R. T. Winston Berkman-Breen
(NY Bar # 5559372)
Khandice Lofton (OH Bar # 101015)
Student Borrower Protection Center (a fiscally
sponsored project of the Shared Ascent Fund)
40 Rector Street, 9th Floor
New York, NY 10006
winston@protectborrowers.org
khandice@protectborrowers.org

*Counsel for Plaintiff American Federation of
Teachers*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...............................................................................................................3

I.      MOHELA DOES NOT QUALIFY FOR FORS REMOVAL............................................3

      A.      MOHELA Has No Colorable Federal Defense To AFT's Claims ........................3

            1.      MOHELA's Definition Of "Colorable" Renders The Requirement Of A Colorable Federal Defense Meaningless .............................................3

            2.      MOHELA's State Sovereign Immunity Defense Is Not Colorable............6

                a.      MOHELA Is Financially Independent From Missouri...................8

                b.      Missouri Did Not Intend MOHELA To Be An Arm Of The State............................................................................................10

                c.      Missouri Has Minimal Control Over MOHELA ..........................12

            3.      MOHELA's Derivative Federal Sovereign Immunity Defense Is Not Colorable..............................................................................................14

            4.      MOHELA's Preemption Defense Is Not Colorable ................................16

                  a.      AFT's Claims Are Not Expressly Preempted By The HEA..........16

                b.      AFT's Claims Do Not Conflict With The HEA ...........................17

      B.      MOHELA Was Not Acting At The Direction Of ED.............................................18

      C.      MOHELA's Wrongful Conduct Does Not Relate To Federal Duties .................20

II.     THERE IS NO FEDERAL QUESTION JURISDICTION ...............................................22

      A.      Federal Issues Are Not Necessarily Raised .......................................................22

      B.      Any Federal Issues Are Unsubstantial And Undisputed.......................................24

CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alden v. Maine*,
  527 U.S. 706 (1999)..................................................................................6

*Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-East v. Tenn. Gas Pipeline Co.,
  LLC*,
  29 F. Supp. 3d 808 (E.D. La. 2014)......................................................24

*Biden v. Nebraska*,
  143 S. Ct. 2355 (2023).................................................................7, 11, 12, 13

*Blair v. City of Hannibal*,
  194 F. Supp. 3d 875 (E.D. Mo. 2016)....................................................11

*BP P.L.C. v. Mayor & City Council of Balt.*,
  593 U.S. 230 (2021)................................................................................22

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
  797 F.3d 720 (9th Cir. 2015) .................................................................20

*California v. Mesa*,
  813 F.2d 960 (9th Cir. 1987) ...................................................................4

*Caris MPI, Inc. v. UnitedHealthcare, Inc.*,
  108 F.4th 340 (5th Cir. 2024) ..................................................................5

*Chae v. SLM Corp.*,
  593 F.3d 936 (9th Cir. 2010) ...........................................................16, 17

*Chartrand v. Solarflare Comms., Inc.*,
  2021 WL 1575253 (S.D. Cal. Apr. 22, 2021)........................................18

*Clean Label Project Found. v. Now Health Grp., Inc.*,
  2021 WL 2809106 (D.D.C. Jul. 6, 2021)...............................................23

*Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*,
  996 F.3d 243 (4th Cir. 2021) .............................................................5, 22

*College Loan Corp. v. SLM Corp.*,
  396 F.3d 588 (4th Cir. 2005) .................................................................17

*\*Dist. of Columbia v. Exxon Mobil Corp.*,
  89 F.4th 144 (D.C. Cir. 2023)..................................................2, 21, 22, 23

*Dykes v. Mo. Higher Educ. Loan Auth.*,
    2021 WL 3206691 (E.D. Mo. July 29, 2021) ........................................................10

*Flavell v. Kim*,
    2022 WL 670271 (D.D.C. Mar. 7, 2022) .............................................................23

*Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*,
    245 F. Supp. 2d 1144 (D. Colo. 2002) ...................................................1, 18, 21

*Good v. U.S. Dep't of Educ.*,
    2022 WL 2191758 (D. Kan. June 16, 2022) ............................................................6

*Good v. U.S. Dep't of Educ.*,
    2024 WL 4745213 (10th Cir. Nov. 12, 2024).............................................. *passim*

*Gowens v. Capella Univ., Inc.*,
    2020 WL 10180669 (N.D. Ala. June 1, 2020) ........................................................7

*Graves v. 3M Co.*,
    17 F.4th 764 (8th Cir. 2021) ..................................................................................5

*Gunn v. Minton*,
    568 U.S. 251 (2013)............................................................................................24

*Henry v. United States*,
    2021 WL 6619330 (D.D.C. Sept. 30, 2021) ..........................................................8

*Hess v. Port Auth. Trans-Hudson Corp.*,
    513 U.S. 30 (1994)................................................................................................8

*Hilbert v. McDonnell Douglas Corp.*,
    529 F. Supp. 2d 187 (D. Mass. 2009) ..............................................................1, 3

*Holdren v. Buffalo Pumps, Inc.*,
    614 F. Supp. 2d 129 (D. Mass. 2009) ...................................................................3

*Hyland v. Navient Corp.*,
    2019 WL 2918238 (S.D.N.Y. July 8, 2019) ........................................................16

*Idaho Potato Comm'n v. Wash. Potato Comm'n*,
    410 F. Supp. 171 (D. Idaho 1975) ......................................................................11

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
    824 F.3d 308 (2d Cir. 2016)................................................................................24

*Jefferson Cnty. v. Acker*,
    527 U.S. 423 (1999)............................................................................................22

*K&D LLC v. Trump Old Post Office LLC*,
  951 F.3d 503 (D.C. Cir. 2020) ...................................................................6

*Kaul v. Fed. of State Med. Bds.*,
  2020 WL 7042821 (D.D.C. Dec. 1, 2020) .......................................8, 13

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*,
  955 F.3d 908 (11th Cir. 2020) ...............................................16, 17, 18

*In re Lombard Pub. Facilities Corp.*,
  579 B.R. 493 (Bankr. N.D. Ill. 2017) .....................................................11

*Mayor & City Council of Balt. v. BP P.L.C.*,
  952 F.3d 452 (4th Cir. 2020) ..................................................................22

*Menorah Med. Ctr. v. Health & Educ. Facilities Auth.*,
  584 S.W.2d 73 (Mo. 1979) .............................................................11, 12

*Mesa v. California*,
  489 U.S. 121 (1989) ............................................................................3, 4

*\*MobilizeGreen, Inc. v. Cmty. Found. for Nat'l Cap. Region*,
  101 F. Supp. 3d 36 (D.D.C. 2015) ...................................................2, 18

*Moore v. Elec. Boat Corp.*,
  25 F.4th 30 (1st Cir. 2022) .....................................................................15

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
  928 F.3d 639 (7th Cir. 2019) ...........................................................16, 17

*New York v. Pa. Higher Educ. Assistance Agency*,
  2020 WL 2097640 (S.D.N.Y. May 1, 2020) ........................................16

*Nigro v. Pa. Higher Educ. Assistance Agency*,
  2020 WL 5369980 (M.D. Pa. Sept. 8, 2020) .................................14, 15

*Organic Consumers Association v. Hain Celestial Group, Inc.*,
  285 F. Supp. 3d 100 (D.D.C. 2018) .......................................................23

*Papp v. Fore-Kast Sales Co., Inc.*,
  842 F.3d 805 (3d Cir. 2016) .....................................................................5

*\*Pellegrino v. Equifax Info. Servs., LLC*,
  709 F. Supp. 3d 206 (E.D. Va. 2024) .........................................9, 10, 13

*Pennsylvania v. Navient Corp.*,
  354 F. Supp. 3d 529 (M.D. Pa. 2018) ...................................................18

*Pennsylvania v. Navient Corp.*,
   967 F.3d 273 (3d Cir. 2020).....................................................................................16, 17

*Perkins v. Equifax Info. Servs.*,
   2020 WL 13120600 (W.D. Tex. May 1, 2020) ...................................................9, 10

*Pilkin v. Sony Interactive Ent., LLC*,
   2019 WL 633356 (D.D.C. Feb. 14, 2019) ..............................................................25

*Process & Industrial Developments Limited v. Federal Republic of Nigeria*,
   962 F.3d 576 (D.C. Cir. 2020) ............................................................................4, 5

*Puerto Rico Ports Auth. v. Fed. Maritime Comm'n*,
   531 F.3d 868 (D.C. Cir. 2008) ....................................................................... *passim*

*Ryan v. Dow Chem. Co.*,
   781 F. Supp. 934 (E.D.N.Y. 1992) ..........................................................................1

*In re Stout*,
   231 B.R. 313 (Bankr. W.D. Mo. 1999).....................................................................7

*Wash. Consulting Grp., Inc. v. Raytheon Tech. Servs. Co., LLC*,
   760 F. Supp. 2d 94 (D.D.C. 2011) ...................................................................23, 24

*Watson v. Philip Morris Co.*,
   551 U.S. 142 (2007)...............................................................................1, 19, 20

*Willingham v. Morgan*,
   395 U.S. 402 (1969)................................................................................22

**Constitution**

U.S. Const. amend. XI ...............................................................................6, 8

**Statutes**

28 U.S.C. § 1442(a)(1)....................................................................... *passim*

Mo. Rev. Stat. § 173.360 ......................................................................10, 11, 13

Mo. Rev. Stat. § 173.365 ...............................................................................12

Mo. Rev. Stat. § 215.020 ...............................................................................11

Mo. Rev. Stat. § 260.010 ...............................................................................11

Mo. Rev. Stat. § 360.020 ...............................................................................11

Mo. Rev. Stat. § 360.025 ...............................................................................12

Mo. Rev. Stat. § 360.085 ...........................................................................................................11

**Other Authorities**

Danielle Douglas-Gabriel, *Student Loan Servicer MOHELA Faces New Punishment from Biden Administratio*n, WASH. Post (Oct. 17, 2024), https://www.washingtonpost.com/education/2024/10/16/mohela-student-loans-punishment/ .......................................................................................................15, 21, 24

*Education Increases Servicer Performance, Transparency, and Accountability Before Loan Payments Restart*, Oct. 15, 2021, https://www.ed.gov/about/news/press-release/us-department-of-education-increases-servicer-performance-transparency-and-accountability-before-loan-payments-restart............................................................................................................19

*Federal Preemption and Joint Federal-State Regulation and Oversight of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers,* 88 Fed. Reg. 47370, 47372 (July 24, 2023)................................17, 18

## PRELIMINARY STATEMENT

MOHELA has not met its burden of supporting removal.

In arguing otherwise under the federal officer removal statute, 28 U.S.C. § 1442(a)(1) ("FORS"), MOHELA advocates an interpretation of FORS's requirements so weak that they disappear entirely. That undermines the statute's purpose as a gateway to federal jurisdiction, particularly for federal contractors like MOHELA. The Supreme Court has made clear that FORS's purpose is to "protect the Federal Government from the interference" state courts might inflict on its lawful operations. *Watson v. Philip Morris Co.*, 551 U.S. 142, 147–50 (2007). In light of that purpose, courts considering attempted removals by federal contractors have recognized that "[b]ecause [FORS] is premised on the protection of *federal* activity and an anachronistic mistrust of state courts' ability to protect and enforce *federal* interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden of establishing the official nature of their activities." *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1150 (D. Colo. 2002) (emphasis in original); *see also Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 191 n.3 (D. Mass. 2009); *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 939 (E.D.N.Y. 1992).[1] On each factor, MOHELA has failed to carry its burden of demonstrating removal was appropriate.

*First*, FORS removal is unavailable because MOHELA does not have any colorable federal defense to AFT's claims. The primary authority MOHELA relies upon to present a colorable state sovereign immunity defense was recently reversed by the Tenth Circuit (the first court of appeals to rule on whether MOHELA is entitled to sovereign immunity), which held unequivocally that MOHELA "is not entitled to share in Missouri's sovereign immunity." *Good v. U.S. Dep't of*

---

[1] Emphases are added throughout, unless otherwise noted.

*Educ.*, 2024 WL 4745213, at *34 (10th Cir. Nov. 12, 2024).  The sound analysis supporting that decision establishes that MOHELA has no claim here, given its financial independence from Missouri, the intention of the Missouri legislature that MOHELA not be an arm of the state, and the practical realities that MOHELA does not perform state functions and Missouri does not control MOHELA.  MOHELA's other asserted federal defenses are likewise not colorable. MOHELA did not even assert derivative federal sovereign immunity in its motion to dismiss (and has no colorable claim in any event).  And its preemption argument has been correctly rejected by numerous federal courts.  MOHELA's failure to establish a colorable federal defense to AFT's claims is sufficient to remand this case back to the Superior Court of the District of Columbia.

*Second*, even if this Court considers other FORS factors, MOHELA still does not prevail. Federal subject matter jurisdiction is lacking here because MOHELA was not "act[ing] under the direction of a federal officer" nor is it being sued for actions "relating to" any purported federal officer status, as is required.  *MobilizeGreen, Inc. v. Cmty. Found. for Nat'l Cap. Region*, 101 F. Supp. 3d 36, 41 (D.D.C. 2015).  MOHELA asserts merely a remote connection between its contractual obligations and the misconduct underlying AFT's claims, but FORS requires more. Courts have recognized that FORS removal turns on evaluation of the terms of the federal contract and determination of whether the "*specific activities* conducted by the [removing party]" underlying the plaintiff's claims were *"in concert with the federal government"*—in other words, whether the wrongful conduct was "at the behest of or in coordination with federal officers." *Dist. of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 156 (D.C. Cir. 2023).  Here, MOHELA's contract expressly shows that its misconduct was *not* at the direction of or in concert with the Department of Education ("ED"); to the contrary, the misconduct was in direct defiance of MOHELA's responsibilities to ED, as reflected by ED's series of recent reprimands of MOHELA for its

violation of its duties under the federal contract.

Finally, MOHELA's assertion that this court has federal question jurisdiction is meritless, because AFT's claims under District of Columbia law do not raise any federal issues.

AFT therefore respectfully requests that the Court remand this action to the Superior Court of the District of Columbia.

## ARGUMENT

### I.    MOHELA DOES NOT QUALIFY FOR FORS REMOVAL

#### A.    MOHELA Has No Colorable Federal Defense To AFT's Claims

##### 1.    MOHELA's Definition Of "Colorable" Renders The Requirement Of A Colorable Federal Defense Meaningless

Although mere "conclusory" assertions are insufficient to "demonstrate a colorable federal defense," *Hilbert*, 529 F. Supp. 2d at 192, MOHELA urges this Court to interpret "colorable" as imposing such a low bar as to be practically meaningless.  *E.g.*, Defendant's Opposition to Remand, ECF No. 37 ("Opp."), at 19 (arguing "a defense is 'colorable' if it is 'at least possible' and not 'obviously meritless'").  Contrary to MOHELA's suggestion, Opp. 20, invoking federal court jurisdiction over state law claims requires more than clearing the baseline for non-sanctionable argument under Rule 11.

The Supreme Court has made it clear that demonstrating "colorable" federal defenses must involve a meaningful inquiry into the validity of the defense, because any other interpretation "would eliminate the substantive Art. III foundation of § 1442(a)(1) and unnecessarily present grave constitutional problems."  *Mesa v. California*, 489 U.S. 121, 137 (1989); *see also Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 141 (D. Mass. 2009) ("A colorable federal defense, as *Mesa* itself makes plain, is not a requirement that may be reduced to the point of vanishing altogether.").  AFT agrees MOHELA need not show a defense is "clearly sustainable" or "win [its]

case before [it] can have [the case] removed." Opp. 20. But FORS's very constitutionality is contingent upon the presence of a colorable federal defense, *Mesa*, 489 U.S. at 128; thus, something more than merely naming a "not obviously meritless" defense is required.

*Mesa* is instructive. There, it was not "obviously meritless" for U.S. postal workers accused of violating state law to claim absolute immunity, a federal defense, since the offenses were committed while the defendants were on duty and acting within the scope of their federal employment. Nonetheless, the Supreme Court affirmed remand to state court, 489 U.S. at 123, on the basis of the Ninth Circuit's holding that the defendants had "no colorable claim that federal immunity" protected their acts. *California v. Mesa*, 813 F.2d 960, 965 (9th Cir. 1987). The Ninth Circuit distinguished between the *lack* of colorable immunity defenses in that case—which involved driving violations while defendants were on duty driving mail trucks—and *colorable* claims of immunity recognized in other cases, such as "when a federal officer received a speeding ticket while hurrying to stage a raid on a suspected illegal still." *Id.* *Mesa* thus demonstrates that federal courts must engage in a substantive inquiry into whether an asserted federal defense has sufficient basis to support removal, rather than MOHELA's rubber-stamping exercise.

To avoid that substantive inquiry, MOHELA turns to cases that have nothing to do with FORS and thus do not implicate the federalism concerns that require this Court to engage in more than a superficial review of MOHELA's asserted defenses. First, MOHELA seizes upon the D.C. Circuit's use of the phrase "obviously meritless" in *Process & Industrial Developments Limited v. Federal Republic of Nigeria*, 962 F.3d 576, 583 (D.C. Cir. 2020), putting a "not" in front of that phrase and proclaiming it a legal standard. But that phrase does not purport to establish a governing legal standard—it is simply language used to describe one example of a non-colorable defense. Even if it was intended to define a legal standard, which it was not, the D.C. Circuit was

interpreting **an entirely different statute**—the "colorable assertion of immunity" requirement of the arbitration exception to the Foreign Sovereign Immunities Act ("FSIA"). *Id.* at 579. The colorability requirements of FSIA and FORS serve diametrically opposing purposes and should not be conflated.[2]

Second—and even more remarkably—MOHELA points to a case assessing whether a party should be *sanctioned* and suggests that should form the standard for invoking federal jurisdiction. Opp. 20 (citing *Schlaifer Nance & Co., Inc. v. Est. of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999)). Lowering the bar on "colorable federal defense" to be merely sufficient to avoid sanctions for frivolous legal argumentation cannot be squared with FORS's purpose and the need to balance competing concerns of federalism and deference to a plaintiff's choice of forum.

The D.C. Circuit has not laid out a clear standard for "colorable" in the FORS context and other circuits to consider the issue have used varying language. For example, the Third Circuit—which MOHELA ignores, presumably because it is not favorable to them—defines it as a "defense [that] was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 815 (3d Cir. 2016). MOHELA instead cites language from other circuits, including "plausible," *Graves v. 3M Co.*, 17 F.4th 764, 771 (8th Cir. 2021); *Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 254 (4th Cir. 2021), and not "immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous," *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 346 (5th Cir. 2024). But cherry-picking among competing formulations cannot detract from the

---

[2] In FORS, a "colorable" defense serves as a ticket *into* federal court, expanding federal jurisdiction at the expense of state sovereignty and a plaintiff's choice of forum. In FSIA, a colorable defense serves as a ticket *out* of federal court, limiting its jurisdiction to protect sovereignty of foreign states. *See Process & Indus. Dev.*, 962 F.3d at 579 (noting that FSIA colorability is designed to "prevent parties from prolonging litigation by taking obviously meritless interlocutory appeals").

fundamental purpose of the "colorable defense" requirement, which is to ensure federal courts do not lightly usurp state power to adjudicate matters arising under state law, particularly where, as here, the matters involve entirely private, non-diverse parties.

Beyond inapposite cases and cherry-picked words, MOHELA relies heavily on the D.C. Circuit's decision in *K&D LLC v. Trump Old Post Office LLC*, 951 F.3d 503, 508 (D.C. Cir. 2020). MOHELA significantly overstates *K&D* as holding that courts must "take no position on the merits of [the] defense." Opp. 20 (quoting *K&D*, 951 F.3d at 507). In reality, while *K&D* "t[ook] no position on the merits of President Trump's defense," it expressly recognized that under FORS, the court "need[ed]" to engage in a substantive evaluation of the removing party's "theory of the case" to determine whether the defense was colorable. 951 F.3d at 507. That is all AFT seeks here, and such an evaluation demonstrates that MOHELA's asserted federal defenses are not colorable and cannot support federal jurisdiction.

### 2. MOHELA's State Sovereign Immunity Defense Is Not Colorable

MOHELA's primary authority supporting the colorability of its state sovereign immunity defense has been overruled.[3] The Tenth Circuit—the *only* circuit court to consider this issue—has now ruled that MOHELA is not an arm of the state, declaring in no uncertain terms that MOHELA "is not entitled to share in Missouri's sovereign immunity." *Good*, 2024 WL 4745213 at *34 (overruling *Good v. U.S. Dep't of Educ.*, 2022 WL 2191758 (D. Kan. June 16, 2022)). The same result must follow here. Notably, MOHELA argued to this Court that the Tenth Circuit's standard was "quite similar" to the D.C. Circuit's test, accounting for "each factor that AFT says is critical." Opp. 22–34 (cleaned up).

---

[3] AFT disagrees that MOHELA has not waived Eleventh Amendment immunity. *See* Opp. 14 n.3 & 21 n.7. In any event, that does not make a practical difference for the purposes of this motion, as the parties agree MOHELA has not waived broader state sovereign immunity arguments. *Alden v. Maine*, 527 U.S. 706, 712–13 (1999).

MOHELA's contention that it has a colorable claim to be an arm of the state, Opp. 22–24, is a fringe view rejected by the only appellate court to consider the question as well as four district courts. MOHELA finds support in just two decisions: one unreported ruling from a district court in Alabama and the other from a bankruptcy court a quarter century ago. *Gowens v. Capella Univ., Inc.*, 2020 WL 10180669 (N.D. Ala. June 1, 2020); *In re Stout*, 231 B.R. 313 (Bankr. W.D. Mo. 1999). Even on their own terms, those decisions plainly lack merit. *Gowens* applied the Eleventh Circuit's test, which is meaningfully different from the D.C. Circuit's test, and did so incoherently. *See* Plaintiff's Motion to Remand and Incorporated Memorandum of Law, ECF No. 27 ("Br."), at 21–22. *Stout* involved a suit against the Commissioner of MOHELA "to determine the dischargeability of a debt owed to the state." 231 B.R. at 315. The court recognized the state was the "real party in interest" because a judgment discharging the debt judgment would "result in both a restraint on the actions of the state (i.e., by prohibiting it from collecting on a debt) and a drain on the public treasury (i.e., by not receiving payment of a debt)." *Id.* That reasoning has no relevance here, because AFT is not seeking to discharge a debt owed to Missouri; it is seeking to hold MOHELA accountable for violations of D.C. law.[4]

When one considers the D.C. Circuit's sovereign immunity test, *Puerto Rico Ports Auth. v. Fed. Maritime Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008), it is clear the result should be the same as in the Tenth Circuit (and nearly every district court)—rejection of MOHELA's sovereign immunity claim. None of MOHELA's arguments concerning (1) its "overall effect on the state treasury"; (2) the state's intent "as to the status of the entity, including the functions performed by

---

[4] MOHELA also suggests the Supreme Court's recent decision in *Biden v. Nebraska*, 143 S. Ct. 2355 (2023), establishes that MOHELA is an arm of the state and entitled to sovereign immunity. Opp. 4, 24–25, 27–29, 32. *Biden* does no such thing. *See* Br. 16–17 n.6. The only federal court of appeals to address this issue correctly recognized that "*Biden* did not definitively opine upon or resolve the arm-of-the-state question." *Good*, 2024 WL 4745213, at *13.

the entity"; and (3) the extent to which the state controls MOHELA, *id.*, suggests otherwise.

### a.    MOHELA Is Financially Independent From Missouri

MOHELA's suggestion, Opp. 29–30, that its financial independence from Missouri has no bearing on whether it is an arm of the state is badly wrong.  Controlling Supreme Court authority holds that the "vulnerability of the State's purse" is "the most salient factor in Eleventh Amendment determinations" because the "impetus for the Eleventh Amendment [is] the prevention of federal court judgments that must be paid out of a State's treasury."  *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994).  Assessing an entity's financial independence is fully consistent with *Puerto Rico*, which instructs the Court to assess MOHELA's "financial relationship with [the State] and its overall effects on the [State's] Treasury."  531 F.3d at 878–79 (citing *Hess*, 513 U.S. at 45–46).  This Court has recognized that an entity's "financial autonom[y]" influences its "overall effects on the state treasury."  *Kaul v. Fed. of State Med. Bds.*, 2020 WL 7042821, at *12 (D.D.C. Dec. 1, 2020).  MOHELA relies on *Henry v. United States*, 2021 WL 6619330 (D.D.C. Sept. 30, 2021), but *Henry* adopted the Seventh Circuit's standard, which allows financial independence to be disregarded when the other factors point towards immunity.  *Id.* at *6.  That is not the standard in the D.C. Circuit, which "*requires* examination" of each factor, including "overall effects on the state treasury."  *Puerto Rico*, 531 F.3d at 873; *see also Kaul*, 2020 WL 7042821, at *12–13 (analyzing financial independence even though control and intent weighed in favor of immunity).

MOHELA also fails to support its conclusory assertion that a judgment against MOHELA would adversely affect the state treasury.  To the contrary, all relevant facts demonstrate MOHELA's financial independence.  *See* Br. 14–16.  As the Tenth Circuit said, it is "clear beyond peradventure that" MOHELA retains "exclusive control over its assets."  *Good*, 2024 WL 4745213, at *26.  MOHELA compares itself to the "entity at issue" in *Puerto Rico*, which was

afforded immunity.  Opp. 17.  But MOHELA omits that by law, Puerto Rico would substitute into an action against the entity at issue and was directly "legally liable" for some of the entity's actions. *Puerto Rico*, 531 F.3d at 879.  That critical fact, not present here, was the basis of the D.C. Circuit's conclusion that a judgment against the entity affected the state treasury.  *Id.* at 880.

At best, MOHELA points to isolated indicia of some loose financial relationship with the state, none of which establishes that a judgment in this case would have an effect on Missouri's treasury sufficient to make MOHELA an arm of the state.  MOHELA first highlights its contributions to development projects, grants, scholarships, and line items in the state budget, pointing particularly to its outstanding obligation to the Lewis and Clark Discovery ("LCD") Fund of "more than $100 million."  Opp. 29.  But MOHELA's contributions are purely voluntary, *see Pellegrino v. Equifax Info. Servs., LLC*, 709 F. Supp. 3d 206, 213 (E.D. Va. 2024), and MOHELA does not suggest otherwise.  That MOHELA "*might* want to transfer" additional funds "in the future, and that this desire *might* be frustrated by a judgment against it, is too attenuated to invoke the protections of sovereign immunity."  *Perkins v. Equifax Info. Servs.*, 2020 WL 13120600, at *4 (W.D. Tex. May 1, 2020) (emphasis in original).[5]  The LCD Fund does not change this calculus. Even if MOHELA has an outstanding contribution of $100 million, Opp. 29, Missouri is "*not required by statute* to fund MOHELA's share" of the LCD Fund.  *Pellegrino*, 709 F. Supp. 3d at 213.  Because the state is not responsible for funding MOHELA's share, any "delay" in payment "would not impact the general revenue of the State."  *Id.* at 214.  As *Good* held, the LCD Fund's

---

[5] MOHELA's reliance on an *amicus* brief filed by Missouri in support of MOHELA's motion to dismiss is misplaced on AFT's motion to remand, given that the Court ordered "further briefing on MOHELA's motion to dismiss shall be stayed pending resolution of the motion to remand." Minute Order, Sept. 3, 2024.  In any event, the facts belie the *amicus* brief's conclusory assertion that a judgment would "'imperil its ability to uphold [MOHELA's] ability to further disburse funds into the State Treasury.'"  *See* Opp. 29 (quoting ECF No. 31 at 8).

"discrete exception to the general wall of separation between the finances of MOHELA and the [s]tate ... does not change the reality that, for the most part, the finances" of MOHELA and the state are "entirely separate."  2024 WL 4745213, at *27.

MOHELA's financial independence from Missouri thus "strongly militates" against a finding that MOHELA is an arm of the state, as numerous courts have held.  *E.g.*, *id.*; *Perkins*, 2020 WL 13120600, at *3; *Pellegrino*, 709 F. Supp. 3d at 215; *Dykes v. Mo. Higher Educ. Loan Auth.*, 2021 WL 3206691, at *4 (E.D. Mo. July 29, 2021).

### b.    Missouri Did Not Intend MOHELA To Be An Arm Of The State

Missouri never intended for MOHELA to be an arm of the state, and the state's *post hoc* attempts to declare otherwise carry no weight.  When examining the state's "intent," the Court must consider whether state *law* "expressly characterizes" the entity as a "government instrumentality" (Missouri law does not); whether the entity performs state governmental functions (MOHELA does not); whether the entity is treated as a state instrumentality for purposes of other laws (MOHELA is not); and the state's representations in the case about the entity's status (on AFT's motion to remand, there are none).  *Puerto Rico*, 531 F.3d at 874–75.

MOHELA's argument first relies on language from *Puerto Rico* that is wholly absent from the statute at issue here.  Missouri law refers to MOHELA as a "public instrumentality," Mo. Rev. Stat. § 173.360; it does not, as MOHELA falsely asserts, "expressly characterize[]" MOHELA as a "government instrumentality," Opp. 26.  The difference matters.  The latter formulation was given some weight by the D.C. Circuit in *Puerto Rico*, when it noted that the relevant entity's enabling act described it as a "government instrumentality" and "government controlled corporation."  531 F.3d at 875.  Missouri chose to use "public," not "government," to describe MOHELA, despite its choice to describe *other* agencies—not MOHELA—as governmental

instrumentalities.[6]   And the Missouri Supreme Court has held that use of the terms "public instrumentality" and "body politic and corporate" to describe a different agency known as MOHEFA (the Health and Educational Facilities Authority of the State of Missouri) did *not* create an arm of the state, ruling that MOHEFA "is a separate entity from the state" and "is not the state." *Menorah Med. Ctr. v. Health & Educ. Facilities Auth.*, 584 S.W.2d 73, 78, 82 (Mo. 1979) (interpreting Mo. Rev. Stat. § 360.020).   The court held this despite MOHEFA's enacting statute empowering it to "perform[] a public function [on] behalf of the state." Mo. Rev. Stat. § 360.085. That ruling, which MOHELA ignores, establishes that Missouri law's description of MOHELA as a "public instrumentality" indicates an intent that MOHELA *not* be considered an arm of the state.

*Second*, MOHELA does not perform state governmental functions. Br. 17.   The servicing of federal student loans to non-Missouri residents attending colleges outside of Missouri is not a Missouri state function under even the most capacious reading of the term. *See, e.g.*, *Blair v. City of Hannibal*, 194 F. Supp. 3d 875, 881 (E.D. Mo. 2016) ("Governmental functions are those performed for the common good of all unlike proprietary functions which are performed for the benefit or profit of the" entity performing the function).[7]   *Biden*'s standing analysis did not hold otherwise. *See supra* 7 n.4; *contra* Opp. 27.

*Third*, Missouri law treats MOHELA differently than it treats other state agencies. Br. 18. While MOHELA points to a statute requiring it to "comply with all statutory requirements

---

[6] *See, e.g.*, Mo. Rev. Stat. § 260.010 (State Environmental and Energy Resources Authority is a "*governmental* instrumentality"); Mo. Rev. Stat. § 215.020 (Missouri Housing Development Commission is a "*governmental* instrumentality").  For MOHELA, Missouri instead used the term "*public* instrumentality" and "body politic and corporate." Mo. Rev. Stat. § 173.360.

[7] *See also In re Lombard Pub. Facilities Corp.*, 579 B.R. 493, 501 (Bankr. N.D. Ill. 2017) ("Operating a hotel . . . is not a government function."); *Idaho Potato Comm'n v. Wash. Potato Comm'n*, 410 F. Supp. 171, 175 (D. Idaho 1975) (advertising and promotion are "not a governmental function").

respecting the conduct of public business by a public agency," it fails to disclose that provision applies only to how MOHELA holds its public meetings. Mo. Rev. Stat. § 173.365. MOHE<u>F</u>A—which, again, the state Supreme Court held to be an entity *separate* from the state—is subject to identical statutory language regarding public meetings. Mo. Rev. Stat. § 360.025.

Finally, MOHELA cites Missouri's representation in its *amicus* brief as an indication of the state's intent. Opp. 25–26; ECF No. 31. Regardless of whether an *amicus* brief in support of a motion that has been stayed could establish the state's intent, *see supra* at 9 n.5, the brief should be given no weight. Not only does it egregiously twist *Biden* to attempt to fit its narrative, *see supra* at 7 n.4, it also fails to cite, let alone substantively discuss, the Missouri Supreme Court's ruling in *Menorah Medical Center*, the statutory and structural differences identified in AFT's motion to remand, Br. 13–23, or the numerous decisions finding that MOHELA is not an arm of the state, *id.* 19–23. Missouri's *amicus* brief does not represent a principled expression of state intent, but rather is a political position that should not be entitled to any deference.

### c.    Missouri Has Minimal Control Over MOHELA

MOHELA exaggerates the extent to which the state controls it, and tries to minimize its legal and functional independence, which demonstrate that MOHELA is not an arm of the state.

MOHELA's assertion that it is under Missouri's control primarily focuses on what it misguidedly claims are similarities between MOHELA's Board and the Puerto Rico Ports Authority ("PRPA") board at issue in *Puerto Rico*. Opp. 28–29. But MOHELA is structured differently from and exercises significantly more autonomy than the PRPA. The PRPA board was composed of a majority of "high-ranking" government officials, who served on the PRPA board merely "by virtue of their government positions" and "perform[ed] [those] services" "as part of their official governmental duties." 531 F.3d at 870, 877. The *Puerto Rico* court reasoned these facts "demonstrate" that Puerto Rico "directly controls" the PRPA board. *Id.* at 878. MOHELA's

Board, by contrast, is composed of seven members, including two "representatives of higher education institutions, one public and one private," two "representatives of lending institutions in Missouri," and one "representative of the public."  Mo. Rev. Stat. § 173.360.  The other two members are the "member of the coordinating board" and the "commissioner of higher education."  *Id.  Puerto Rico* also emphasized that "[t]he Governor's power to remove a *majority* of the Board *at will* allows him to directly supervise and control PRPA's ongoing operations."  531 F.3d at 877.  *All* of MOHELA's Board members, by contrast, can only be removed *for cause* after notice and a hearing.  Mo. Rev. Stat. § 173.360.  And a MOHELA Board member's term is five years, while the governor's term is only four.  *Pellegrino*, 709 F. Supp. 3d at 216.  That "suggests an intent by the legislature to insulate members from the governor's control following appointment."  *Id.*

MOHELA posits that "this Court has held, on the merits, that an entity whose board members could be removed by the governor for 'good cause' is subject to 'significant control' by the State and is entitled to sovereign immunity."  Opp. 28–29 (quoting *Kaul*, 2021 WL 1209211, at *9).  But MOHELA ignores the remainder of the Court's analysis, which emphasized that the entity was "subject to budget review of the undersecretary [for the Louisiana office of management and finance] and [was] required to comply with all accounting, reporting, audit, and review requirements which are applicable to budget units."  *Kaul*, 2021 WL 1209211, at *9 (first alteration in original).  MOHELA does not suggest that it has a similar obligation.  Nor could it.  "The State requires nothing more than filing annual reports, a requirement that applies to any stock corporation."  *Pellegrino*, 709 F. Supp. 3d at 217.[8]

The collective weight of these factors—MOHELA's financial independence, indications

---

[8] MOHELA's reliance on *Biden* for the proposition that MOHELA "'is subject to the State's supervision and control,'" Opp. 28 (quoting *Biden*, 143 S. Ct. at 2366), is unpersuasive for the reasons stated above.  *See supra* at 7 n.4.

of the state's intent, and lack of state control—underscore the correctness of the view of the only appellate court and near-unanimous view of the federal district courts that MOHELA cannot credibly assert any entitlement to sovereign immunity.

### 3. MOHELA's Derivative Federal Sovereign Immunity Defense Is Not Colorable

At the outset, MOHELA's contention that derivative sovereign immunity is a "colorable" defense is belied by the fact that MOHELA omitted this defense from its motion to dismiss. ECF No. 26. In any event, MOHELA's operative USDS contract with ED expressly waives this defense. ECF No. 27-2 at 12 ("any claim or defense of Sovereign Immunity … is not applicable to work performed under the Contract[.]"). MOHELA argues the waiver does not apply to its challenged misconduct because it began servicing loans under the USDS contract in April 2024 and completed migrating its servicing operations under the contract in October 2024. Opp. 33. But that acknowledges the USDS contract was in effect at the time of suit, is in effect now, and governed at least some of its loans between April and October 2024. *Id.* Moreover, MOHELA admits that in 2021, ED amended MOHELA's prior, legacy contract (the "DL contract") to expressly state that MOHELA "waive[d] any claims or defenses of qualified immunity for lawsuits relating directly to its performance of this contract." *See id.*; ECF No. 37-5 at 3; *see also* Br. 8 n.2. That waiver was in place at all times relevant to the case. Accordingly, under either the DL contract or the USDS contract, Opp. 34, MOHELA is not entitled to derivative immunity.

Even if the waiver was not dispositive, MOHELA is not entitled to derivative immunity because it has persistently *violated* ED's express directives since becoming a federal contractor. Br. 24–26. The caselaw MOHELA cites in arguing to the contrary is unavailing. MOHELA cites *Nigro v. Pa. Higher Educ. Assistance Agency*, 2020 WL 5369980, at *4 (M.D. Pa. Sept. 8, 2020), but removal was uncontested in that case, *see* No. 1:19CV02000 (M.D. Pa.), ECF No. 8.

Moreover, in *Nigro*, there was no allegation that ED had penalized PHEAA for misconduct. In MOHELA's other cited case, *Moore v. Elec. Boat Corp.*, the plaintiff "proffered evidence colorably show[ing] that it acted at the direction of the Navy, which 'authorized [plaintiff's] actions.'" 25 F.4th 30, 38 (1st Cir. 2022). Those cases thus have no bearing here, where AFT's claims are based on "MOHELA's systemic *violation* of government directives," Br. 25; Compl. ¶¶ 129–30, 148–49, and ED has repeatedly penalized MOHELA for failing to comply with ED's directives—including since AFT filed its motion to remand.[9]

MOHELA additionally contends that because ED's Return to Repayment Playbook makes passing mention of call deflection, and some of AFT's allegations concern MOHELA's abuse of the call deflection system, ED directed MOHELA's misconduct. Opp. 34.[10] But ED's Return to Repayment Playbook instructed that the call deflection process would route borrowers to self-help options, whereas MOHELA's deflection scheme provided no such resources. ED did not direct MOHELA to abuse call deflection in the manner AFT alleges. *See* Compl. ¶¶ 156–72. Moreover, MOHELA's USDS contract requires that MOHELA "shall prioritize borrower needs and preferences to deliver an improved borrower experience" and "shall implement an approach that minimizes risk and disruption to borrowers." ECF No. 27-2 at 10; *see also id.* at 15 (requiring MOHELA to ensure adequate customer service). Time and again, MOHELA has violated rather than followed those clear instructions. *See, e.g.*, Compl. ¶¶ 161–72 (detailing MOHELA's abuse

---

[9] *See* Danielle Douglas-Gabriel, *Student Loan Servicer MOHELA Faces New Punishment from Biden Administration*, WASH. Post (Oct. 17, 2024), https://www.washingtonpost.com/education/2024/10/16/mohela-student-loans-punishment/ (noting ED's broad accusation that MOHELA "struggl[es] to keep up with the demands of its contract to serve some 8 million federal borrowers" and has "neglected to process hundreds of thousands of applications for income-driven repayment plans") ("Wash. Post Article").

[10] MOHELA's exclusive focus on the "call deflection scheme," Opp. 34, effectively concedes that its other wrongdoing is not protected by this purported defense.

of call deflection and its failure to facilitate borrower self-service); ¶¶ 184–90 (same).  MOHELA

cannot seriously claim its rampant misuse of call deflection was compelled by ED—that would

"strain credulity."  *New York v. Pa. Higher Educ. Assistance Agency* ("*NY v. PHEAA*"), 2020 WL

2097640, at *7 (S.D.N.Y. May 1, 2020) (rejecting a nearly identical argument).

Accordingly, MOHELA's misconduct was not compelled by ED—it was in direct violation

of ED's instructions.  MOHELA's derivative immunity defense is not colorable.

### 4.    MOHELA's Preemption Defense Is Not Colorable

#### a.    AFT's Claims Are Not Expressly Preempted By The HEA

AFT alleges that MOHELA affirmatively misrepresented a wide range of information to

borrowers, Compl. ¶¶ 145–72, and made egregious errors in servicing borrowers' loans, such as

improperly charging interest and failing to process loan forgiveness applications, *id.* ¶¶ 126–44.

These are *not* "re-styled improper-disclosure claims," *contra* Opp. 36, as numerous courts have

held in addressing analogous claims, *see* Br. 27–30.[11]  While MOHELA relies on *Chae v. SLM

Corp.*, 593 F.3d 936, 943 (9th Cir. 2010) to argue otherwise, Opp. 36, every decision examining

*Chae* and the HEA's preemptive effect has concluded that the HEA only preempts state mandatory

disclosure requirements, not affirmative misrepresentation claims like those at issue here.  *See

Pennsylvania v. Navient Corp.*, 967 F.3d at 290–93; *Lawson-Ross*, 955 F.3d at 917–19; *Nelson*,

928 F.3d at 649–52; *see also NY v. PHEAA*, 2020 WL 2097640, at *16 n.13; *Hyland*, 2019 WL

2918238, at *6–7.

AFT's allegations primarily concern the rampant misinformation MOHELA voluntarily

provided to borrowers.  *See, e.g.*, Compl. ¶¶ 126–55, 177–90.  The causes of action in AFT's

---

[11]  *See also Hyland v. Navient Corp.*, 2019 WL 2918238, at *6 (S.D.N.Y. July 8, 2019);
*Pennsylvania v. Navient Corp.*, 967 F.3d 273, 277 (3d Cir. 2020); *Lawson-Ross v. Great Lakes
Higher Educ. Corp.*, 955 F.3d 908, 916–23 (11th Cir. 2020); *Nelson v. Great Lakes Educ. Loan
Servs., Inc.*, 928 F.3d 639, 642 (7th Cir. 2019).

Complaint plainly focus on affirmative misrepresentations. *Id.* ¶¶ 205–67. To the limited extent AFT alleges other misconduct, MOHELA fails to establish why that is relevant for a preemption analysis, much less that AFT is pursuing improper disclosure claims. In fact, even *omissions* made in service of affirmative misrepresentations are not preempted by the HEA: "To the extent [plaintiff] faults [a loan servicer] for failing to disclose or notify borrowers of certain information, [and] does so only because [defendant]'s failure to disclose certain information furthered the affirmative misrepresentations [defendant] voluntarily chose to make," plaintiff's claims are not preempted. *Pennsylvania v. Navient Corp.*, 967 F.3d at 290.

### b.    AFT's Claims Do Not Conflict With The HEA

Additionally, AFT's claims are not implicitly preempted by the HEA or any other federal law because they do not conflict with the HEA or frustrate the pursuit of its goals. ED agrees, and has encouraged state attorneys general to bring state consumer protection actions against abusive servicers.[12] That interpretation is entitled to deference under the *Skidmore* doctrine. Br. 32–33.

In arguing otherwise, MOHELA again points to language in ED's Return to Repayment Playbook describing how ED intends to support servicers' "call deflection." Opp. 38; *see* ECF No. 1-5 at 3. But AFT does not challenge call deflection in the abstract, but rather MOHELA's misconduct in abusing call deflection to deprive student loan holders of basic consumer rights. MOHELA further argues that holding it accountable would somehow frustrate HEA's goal of uniform operation of federal student loan programs. Opp. 38–39. MOHELA again relies heavily on *Chae* for the idea that such a goal exists, but that idea has been rejected by numerous courts.[13]

---

[12] U.S. Dep't of Educ., Federal Preemption and Joint Federal-State Regulation and Oversight of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers, 88 Fed. Reg. 47370, 47372 (July 24, 2023) ("ED Interpretation").

[13] *Pennsylvania v. Navient Corp.*, 967 F.3d at 293 (finding no legislative support for uniformity for student loans under the HEA); *Lawson-Ross*, 955 F.3d at 921–22 (same); *Nelson*, 928 F.3d at 651 (same); *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 597 (4th Cir. 2005) (same).

And even if uniformity were a purpose of the HEA, affirmative misrepresentation claims would not conflict with that purpose. *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 553 (M.D. Pa. 2018); *Lawson-Ross*, 955 F.3d at 921–22. ED has said the same. *See* ED Interpretation.

In sum, because MOHELA has failed to show a colorable federal defense, this Court lacks jurisdiction and must grant AFT's motion to remand. 28 U.S.C. § 1442(a)(1). Even if the Court considers the other FORS factors, which it does not have to do, MOHELA is not entitled to removal because it has failed to show that it acted under ED's direction and that its wrongdoing relates to its federal contract with ED.

### B.    MOHELA Was Not Acting At The Direction Of ED

MOHELA has not demonstrated that it "acted under the direction of a federal officer" when it engaged in the misconduct underlying AFT's claims, as is required to support removal under FORS. *MobilizeGreen*, 101 F. Supp. 3d at 41. MOHELA's argument to the contrary suggests that the mere existence of its federal contract with ED is sufficient to show it acted under the direction of ED, without any examination of the substance of the federal contract or the nexus between the contract and the alleged misconduct. Opp. 10–11. That is wrong: the "burden" of showing a removing party acted under the direction of a federal officer "is substantive and is not satisfied by incantations of government contractor status alone." *Freiberg*, 245 F. Supp. 2d at 1152; *Chartrand v. Solarflare Comms., Inc.*, 2021 WL 1575253, at *8 (S.D. Cal. Apr. 22, 2021) (a contractor must show more than they simply acted "in performance of a contract with the government"). In performing this substantive evaluation of the removing party's relationship with the federal government, the Court must consider the contract terms to determine whether the alleged wrongdoing amounted to acts under the federal officer's direction. Br. 6–7 (collecting cases).

MOHELA offers generic descriptions of its servicing relationship with ED to argue that it acted under ED's direction, Opp. 10–12, but the terms of MOHELA's USDS contract with ED

demonstrate otherwise.  Br. 7–8.  The contract states: "[MOHELA] acknowledges that it is … not acting as the U.S. Government under this Contract.  As such [it] acknowledges that any claim or defense of Sovereign Immunity or Qualified Immunity is not applicable to work performed under the Contract."  Ex. 1 at 12.  MOHELA nonsensically argues, Opp. 13–14, that the contract's express statement that sovereign and qualified immunity are "*not applicable* to work performed under the Contract" because MOHELA is "not acting as the U.S. Government under this Contract," Ex. 1 at 12, somehow "suggests" that MOHELA *does* "have the status of federal officer[]" working under the government's direction.  Opp. 14.  That is wrong on its face.  As MOHELA recognizes, the sovereign and qualified immunity defenses "appl[y] only to government officers," *id.*, and, by contract, they are expressly "not applicable" to MOHELA.

MOHELA further attempts to dodge the plain terms of the USDS contract by claiming that the majority of MOHELA's wrongdoing occurred while a different contract (the DL contract) was operative.  Opp. 13–15.  That is wrong.  As discussed above, *supra* at 14, the DL contract was amended in 2021 to prohibit MOHELA from invoking immunity, thus clarifying the reality all along: even under the DL contract, ED intended that MOHELA could not seek to avoid claims arising for servicing misconduct by asserting defenses available only to federal officers.  As ED explained: the modified DL contract "expressly prohibit[s] loan servicers from shielding themselves from lawsuits brought to hold the companies accountable in court for poor servicing practices."[14]

MOHELA additionally argues that *Watson* broadened the "acted under the direction of a

---

[14] U.S. Dep't of Educ., U.*S. Department of Education Increases Servicer Performance, Transparency, and Accountability Before Loan Payments Restart*, Oct. 15, 2021, https://www.ed.gov/about/news/press-release/us-department-of-education-increases-servicer-performance-transparency-and-accountability-before-loan-payments-restart.

federal officer" requirement to the point of meaninglessness, covering any misconduct with a remote connection to a federal contract.  *See* Opp. 12–13.  But that is not what *Watson* says. Rather, the requirement is satisfied only where the conduct in question reflects an "effort to assist, or to help carry out, the duties or tasks of the federal superior," under "the instruction, direction, or guidance of" the federal agency.  551 U.S. at 151–52.[15]  Thus, FORS removal is improper where a contractor cannot demonstrate "the requisite federal control or supervision over" the contactor's performance of its duties.  *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 728 (9th Cir. 2015).  Here, MOHELA cannot demonstrate the requisite federal control or supervision of MOHELA's conduct to show that it acted under the direction of ED, *see* Br. 7–8, and the federal contract with ED demonstrates that MOHELA did not act under ED's direction.

### C.    MOHELA's Wrongful Conduct Does Not Relate To Federal Duties

FORS removal is unavailable for the additional reason that MOHELA is not being sued for actions "relating to" any purported federal officer status.  Instead, MOHELA's misconduct underlying AFT's claims was contrary to MOHELA's contractual obligations to ED and actively hinders ED's mandate to financially assist student borrowers.  Br. 9–13.  In arguing otherwise, MOHELA again misinterprets FORS's requirements to the point that they vanish entirely.

MOHELA asserts that its egregious misconduct is "for or relating to" acts under color of federal office because the challenged conduct (at a high enough level of generality) supposedly "relates to MOHELA's performance under its [ED] contracts" and "the subject of" AFT's claims is "MOHELA's performance of those obligations."  Opp. 15–16.  But MOHELA misunderstands the relevant standard and ignores the very purpose of FORS: protecting *federal* activity and *federal*

---

[15] While MOHELA suggests that ED directed it to engage in the improper call deflection scheme described in AFT's complaint, Opp. 13, that is wrong for the reasons described above.  *See supra* at 15–16.

interests. *Freiberg*, 245 F. Supp. 2d at 1150. As *Exxon* explained, to determine whether "acts taken under color of federal office are 'connected or associated' with the conduct at issue in the case" and thus whether the "relating to" requirement of FORS is met, courts do not simply ask whether the misconduct generally relates to federal contractual obligations, but rather whether the *specific alleged misconduct* was "at the behest of or in coordination with federal officers"—in other words, whether the "specific activities" underlying the suit were "conducted by the [removing party] in concert with the federal government." *Exxon*, 89 F.4th at 155-56.[16]

MOHELA cannot satisfy that standard here, because it cannot demonstrate that its specific misconduct—its manifold servicing abuses and misrepresentations to borrowers, *see* Br. 10–13— was done at the behest of, in coordination with, or in concert with ED. MOHELA's contracts demonstrate that its wrongful acts were in direct defiance of its responsibilities to ED. Moreover, ED's repudiation of MOHELA's pervasive misconduct in violation of its duties under the federal contract further underscores the fact that MOHELA has acted in defiance of its responsibilities to ED (and not at the behest of, in coordination with, or in concert with ED). *Exxon*, 89 F.4th at 156; *see* Wash. Post Article, *supra* at 15 n.9. Thus, "the subject of" AFT's claims is *not* "MOHELA's performance of [its] obligations" under the ED contracts, but rather its defiance of those obligations. *Contra* Opp. 16. This case is like *Exxon*, in which FORS removal was rejected because the "specific activities" challenged by the complaint—alleged "unlawful misrepresentations," similar to MOHELA's here—were not "in concert with the federal

---

[16] MOHELA suggests that the D.C. Circuit's explanation of the "relating to" requirement in *Exxon* was irrelevant dicta, Opp. 15–16, but that is wrong. The D.C. Circuit's conclusion that Exxon's duties under federal contracts were "not sufficiently 'related to' the [plaintiff's] suit" to permit FORS removal expressly turned on its determination that there was no "allegation [Exxon] engaged in [the alleged] misrepresentations at the behest of or in coordination with federal officers," and the complaint did not challenge "any specific activities conducted by [Exxon] in concert with the federal government." *Exxon*, 89 F.4th at 156.

government." *Exxon*, 89 F.4th at 156.[17]

MOHELA's servicing misconduct is not "related to" any purported federal officer status for the additional reason that servicing student loans is not a duty belonging to ED.  Br. 9.  The case MOHELA cites to the contrary, *Express Scripts Pharmacy, Inc.*, turned on the determination that the removing party was "carrying out the duties of [the Department of Defense]" and was "at all times[] subject to the federal government's guidance and control."  996 F.3d at 253.  Those facts distinguish that case from cases—like this case—in which FORS removal is unavailable due to a lack of close "guidance and control" by the government.  *Id.*; *Mayor & City Council of Balt. v. BP P.L.C.*, 952 F.3d 452, 463 (4th Cir. 2020) (rejecting interpretation of FORS that "would bring every seller of contracted goods and services within the ambit of [FORS] when the government is a customer"), *vacated and remanded on other grounds*, 593 U.S. 230 (2021).

## II.    THERE IS NO FEDERAL QUESTION JURISDICTION

### A.    Federal Issues Are Not Necessarily Raised

MOHELA strains to imbue AFT's claims with federal relevance by pointing to responsibilities that "are set by federal law and federal contracts."  Opp. 39.  But contrary to MOHELA's assertions, the existence of federal responsibilities does not suggest a federal issue is "necessarily raised."  MOHELA ignores that AFT brings claims under the DCCPPA, and that "the bulk of legal authority directs" the Court to "limit the application" of this "rare" path to federal jurisdiction to claims "based on a federal statute" or those presenting a "context-free inquiry into

---

[17] *Willingham v. Morgan*, 395 U.S. 402 (1969), and *Jefferson Cnty. v. Acker*, 527 U.S. 423 (1999), do not help MOHELA.  Unlike AFT's claims, the plaintiffs' claims in those cases sought to impose liability for specific conduct that was unquestionably part of defendants' performance of their duties as federal officers.  *Willingham*, 395 U.S. at 403, 409 (seeking to impose liability on warden and chief medical officer of federal penitentiary for conduct "while they were performing" official duties); *Acker*, 527 U.S. at 427–29 (seeking to impose liability for "having engaged in their occupation" as federal judges "without paying [an occupation] tax" (cleaned up)).

the meaning of federal law." *Flavell v. Kim*, 2022 WL 670271, at *5 (D.D.C. Mar. 7, 2022) (cleaned up) (collecting cases). That is why "nearly every DCCPPA claim for which removal to federal court has been challenged has been remanded to D.C. Superior Court." *Clean Label Project Found. v. Now Health Grp., Inc.*, 2021 WL 2809106, at *23 (D.D.C. Jul. 6, 2021). MOHELA has failed to identify *a single DCCPPA case to the contrary*.

Further, the fact that a reviewing court may need to assess MOHELA's responsibilities by looking to limited federal materials, such as ED's borrower-facing website or even the terms of MOHELA's contracts, to determine if MOHELA's statements were accurate or it behaved fairly, does not "necessarily raise" federal issues. *See Exxon*, 89 F.4th at155 (mere application of federal law is an insufficient basis for federal question jurisdiction). Similarly, MOHELA's argument that AFT's request for actual damages necessitates interpreting federal law, Opp. 41, fails. At most, the calculation of damages requires "a fact-specific application of rules that come from both federal and state law," such as federal eligibility for IDR plans and D.C. law concerning the quantification of damages. *Wash. Consulting Grp., Inc. v. Raytheon Tech. Servs. Co., LLC*, 760 F. Supp. 2d 94, 101–02 (D.D.C. 2011) (cleaned up). Courts "refuse[]" to find federal question jurisdiction under such circumstances. *Id.*

MOHELA's argument that AFT's claims "necessarily raise" federal issues because they turn on allegations related to federal programs is also mistaken. MOHELA heavily relies on *Organic Consumers Association v. Hain Celestial Group, Inc.*, 285 F. Supp. 3d 100 (D.D.C. 2018), Opp. 40, but federal question jurisdiction was not contested in that case. Br. 36. Moreover, the facts in *Organic Consumers Association* are readily distinguishable. In that case, the state-law claim for deceptive conduct turned explicitly on whether the defendant labeling its infant formula "organic" was permitted under federal law. 285 F. Supp. 3d at 102. As pleaded, the court

necessarily would need to interpret a federal issue at the core of the state-law claim.  The same is true for the other, out-of-circuit cases on which MOHELA relies.[18]  Here, AFT's claims do not turn on any federal law.  Compl. ¶¶ 205–67.

### B.     Any Federal Issues Are Unsubstantial And Undisputed

MOHELA cursorily argues that merely denying alleged wrongdoing is sufficient to "dispute" a federal issue.  Opp. 41.  Not so.  If that were sufficient, this prong would be reduced to a meaningless, self-executing factor.  Rather, there must be a "dispute *respecting the effect of federal law*."  *Gunn v. Minton*, 568 U.S. 251, 259 (2013).  Such a "dispute" is present only when the "federal issue" is the "central point" of contention.  *Id.*  MOHELA cannot and does not point to a single federal issue in dispute here—much less one that is "central."[19]

Moreover, any federal issues present are insubstantial.  A "substantial factor" is one that is important "to the federal system as a whole."  *Id.* at 260.  MOHELA suggests that AFT's claims present substantial federal issues because they "dictate how MOHELA discharges its responsibilities" and "interfer[e]" with ED's "power to define its relationship with its contractors." Opp. 41–42.  But MOHELA exaggerates.  No outcome of this action would alter ED's relationships with its contractors, especially since the relief that AFT seeks is for MOHELA to cease unfair and deceptive practices that ED itself has condemned.  Courts view "substantial" federal issues as those that "dispute" the "meaning" of "federal statutes or regulations."  *Wash.*

---

[18] *Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-East v. Tenn. Gas Pipeline Co., LLC*, 29 F. Supp. 3d 808, 854–55 (E.D. La. 2014) (plaintiffs' state-law claims explicitly looked to federal laws as the "specific source" for standard of care); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317 (2d Cir. 2016) (plaintiff's state law claim "predicated liability" on whether defendant was entitled to receive certain tax treatment under federal law).

[19] MOHELA's denial of wrongdoing is not only insufficient to "dispute" a federal issue; it also should be given no weight.  Again, even since AFT filed its motion to remand, ED placed MOHELA on a corrective action plan after determining that MOHELA "neglected to process hundreds of thousands of applications for income-driven repayment."  *See* Wash. Post Article, *supra* at 15 n.9.  That further corroborates AFT's claims, *see, e.g.*, Compl. ¶ 5.

*Consulting Grp.*, 760 F. Supp. 3d at 106; *see Pilkin v. Sony Interactive Ent., LLC*, 2019 WL 633356, at *7 (D.D.C. Feb. 14, 2019).  There is no such dispute here, meaning any federal issues implicated are not substantial.  *Id.*  MOHELA's alternative argument—that AFT's claims would undermine a uniform body of law, Opp. 42, is equally unfounded.  *See supra* Section I.A.4.

### C.    Federal-State Balance

MOHELA mischaracterizes the nature of AFT's claims to argue that a "federal forum here would not disrupt the 'balance of federal and state judicial responsibilities.'"  Opp. 42–43 (quoting *Gunn*, 568 U.S. at 264).  Contrary to MOHELA's assertions, the claims AFT brings on behalf of borrowers harmed by MOHELA do not touch on "'the rights of the United States under its contracts,'" Opp. 42, instead, they seek to ensure MOHELA properly upholds its obligations under D.C. law to the borrowers who rely on it.  *See, e.g.*, Compl. ¶ 4.  Moreover, while the federal government *may* have an interest in its contractors' civil liability, Opp. 42–43, states certainly have a strong interest in enforcing their consumer protection laws, which are essential to protecting their citizens.  *See* Br. 39.  The fact that Congress has not made federal courts the exclusive venue for matters relating to federal contractors, and instead made FORS removal merely permissive where the statute's requirements are met, speaks to state courts' ability to hear cases implicating contractor liability.

### CONCLUSION

For the foregoing reasons, AFT respectfully requests that the Court remand this action to the Superior Court of the District of Columbia.

Dated: November 25, 2024

Respectfully submitted,

*/s/ Faith Gay*
Shennan Kavanagh (BBO #655174)  Faith Gay (NY Bar # 2117117)
Jennifer Wagner (WVSB #10639)  Lena Konanova (NY Bar # 4758942)
National Consumer Law Center  David A. Coon (NY Bar # 5538020)
7 Winthrop Square, 4th Floor  Corey Stoughton (DC Bar # 472867)
Boston, MA 02110  Selendy Gay PLLC
617.542.8010  1290 Avenue of the Americas
skavanagh@nclc.org  New York, NY 10104
jwagner@nclc.org  (212) 390-9000
  fgay@selendygay.com
  lkonanova@selendygay.com
Alpha Taylor (DC Bar #252602)  dcoon@selendygay.com
National Consumer Law Center  cstoughton@selendygay.com
1001 Connecticut Ave., NW
Washington, D.C. 20036
202.452.6252  Persis Yu (DC Bar # 90014714)
ataylor@nclc.org  Student Borrower Protection Center (a fiscally
  sponsored project of the Shared Ascent Fund)
  1025 Connecticut Ave NW, #717
  Washington, D.C. 20036
  (202) 618-1328
  persis@protectborrowers.org

  R. T. Winston Berkman-Breen
  (NY Bar # 5559372)
  Khandice Lofton (OH Bar # 101015)
  Student Borrower Protection Center (a fiscally
  sponsored project of the Shared Ascent Fund)
  40 Rector Street, 9th Floor
  New York, NY 10006
  winston@protectborrowers.org
  khandice@protectborrowers.org